*Coffman v. State.*

WILLIAM COFFMAN V. STATE OF NEBRASKA.

FILED MAY 23, 1911. No. 17,011.

1. **Criminal Law: INSTRUCTIONS: REVERSAL.** Where an instruction to a jury is requested by a defendant on trial, and is given by the court in the language as requested, the giving of the instruction, even if erroneous, will not, as a general rule, require the reversal of a judgment.

2. ——: ——: ——. Where an instruction is given by the court upon its own motion, the legal effect of which is practically the same as one given upon the request of the defendant on trial, even if erroneous, a judgment of conviction will not be set aside, unless it clearly appears that the giving of such instruction worked a prejudice to the accused.

ERROR to the district court for Otoe county: HARVEY D. TRAVIS, JUDGE. *Affirmed. Sentence reduced.*

*Oliver G. Leidigh,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

REESE, C. J.

An information was filed in the district court for Otoe county by the county attorney charging plaintiff in error with the crime of burglary and larceny by breaking and

entering a barn in the night-time and stealing a saddle. The trial resulted in a verdict finding plaintiff in error guilty of burglary, and he was sentenced to a term in the penitentiary. He presents the case to this court for review by proceedings in error.

The cause was tried throughout upon the theory that it was necessary to charge and prove that the breaking and entering occurred in the night season; the court so instructing the jury. It is apparent that both court and counsel overlooked the change in the statute by the act of 1905, by which the phrase "in the night season" was eliminated. This, however, could work no prejudice to plaintiff in error, and need not be further noticed. *Schultz v. State*, 88 Neb. 613.

Soon after the discovery of the alleged burglary and larceny, plaintiff in error was apprehended in South Omaha at a pawnshop, where he sought to sell the saddle alleged to have been stolen, when he was returned to the Otoe county jail and there confined until the time of his trial. The length of his imprisonment was from about the 1st day of April until the 1st day of June, of the year 1910. On the trial the sheriff of Otoe county was called as a witness on the part of the state. We copy his testimony bearing on the question in hand. Questioned by the county attorney: "Q. Do you know the defendant William Coffman? A. Yes, sir. Q. Have you at any time since the filing of the complaint in the first instance had any conversation with him about this saddle? A. Yes, sir. Q. Can you state to the court when that was? A. Well, I couldn't state exactly. It was the day we had Oram the last time—the judge was down here. Q. Where was it you had this conversation with him? A. Down in jail. Q. You may state to the jury what he said at that time. A. Why, he said he would come up and plead guilty that he took the saddle, but he wouldn't plead guilty to breaking the place in. I told him he had better not do anything like that. He had better consult with his attorney." This was the whole of the testimony in chief upon this subject. The

cross-examination was as follows: "Q. Mr. Fischer, it was along about the first of April when he was arrested and put in jail? A. Something like that. Q. He has been in jail ever since, hasn't he? A. Yes, sir. Q. At that time from his general line of talk, didn't he seem to understand that he would have to stay in jail possibly until fall for trial? A. No; I think not. He was just anxious to have his hearing and get through with it. Q. Did he say at that time, Mr. Fischer, to get this over he would plead guilty to taking the saddle? A. To get this over? Q. Yes, sir; at the time Oram came up for hearing, pleaded guilty, and was released on probation? A. Yes, sir; he did. Q. He said he wouldn't plead guilty to the burglary? A. He said he wouldn't plead guilty to the breaking, but he would plead guilty to taking the saddle." This was all the evidence upon that subject.

Upon this part of the case the court gave the following instructions: No. 9. "You are instructed that the evidence purporting to show an admission by the accused is admitted for the purpose of connecting the accused with the offense, and you cannot convict the accused of a felony upon his own unsupported admission of guilt, but such admission must be corroborated by other competent testimony sufficient to prove that a crime was committed and that the accused is guilty of the offense beyond a reasonable doubt." No. 15. "The jury are instructed that, if from the evidence they believe the defendant made the confession given in evidence in this case, the jury should consider such confession precisely as they would any other evidence or testimony. The jury are at liberty to judge of it like other evidence, in the light of the circumstances as disclosed by the evidence, but a confession alone is not sufficient evidence that a crime is committed. There should be other proof that the property was stolen. The confession is admitted for the purpose of connecting the defendant with the offense."

In view of the evidence above quoted, neither one of the foregoing instructi ns could receive the unqualified ap-

proval of this court, but the record shows that instruction No. 9, given by the court, is identical with No. 15 of those requested by plaintiff in error. The rule is well settled that a party will not be heard to allege error in the giving of an instruction which he has himself requested.

In considering instruction No. 15, given by the court upon its own motion, in which the word "confession" was used, it is the opinion of a majority of the court that the effect of this instruction could not be treated as prejudicially erroneous, since in legal effect it is not materially different from the one given upon the request of plaintiff in error.

While the evidence is held sufficient to support the verdict of guilty of the burglary, it must be conceded that it is not so direct and clear as to the act of "breaking" into a barn as might be. As to the stealing of the saddle. the evidence is sufficient, aside from plaintiff in error's statement to the sheriff, to establish his guilt. The evidence as to the value of the saddle varied from $20 to $40. It might be doubted whether the evidence is sufficient to show that the theft of the saddle alone would constitute a felony, but upon the whole record we cannot say that the judgment of conviction should be reversed. The penalty imposed was imprisonment in the penitentiary for two years. Upon consideration of the whole case, it is the unanimous opinion of the members of the court that the term of imprisonment is greater by one year than should have been imposed, and, to that extent, is excessive.

The sentence and judgment of the court will therefore be modified to that extent, leaving the term of imprisonment stand for one year.

As thus modified, the judgment is

AFFIRMED.

ROOT, J., concurs in the conclusion.